UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JULIE PROBUS-SCHAD,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　 )　　　No. 4:25 CV 1136 CDP
　　　　　　　　　　　　　　　　)
AUTO-OWNERS INSURANCE　　　　　)
COMPANY,　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　 )

## **MEMORANDUM AND ORDER**

In March 2024, plaintiff Julie Probus-Schad was involved in a motor vehicle

accident and sustained bodily injuries with damages exceeding $150,000.  The at-fault

driver's insurance policy had a $100,000 limit of liability for bodily injuries, and

Probus-Schad recovered this amount from the driver's insurer.  Because her damages

exceeded the at-fault driver's policy limit, Probus-Schad also sought to recover under

the underinsured motorist (UIM) provision of her own automobile insurance policy (the

Policy), which was issued by defendant Auto-Owners Insurance Company and had

UIM coverage up to $100,000 for bodily injuries per person.  After Auto-Owners

declined to provide UIM coverage, Probus-Schad filed this lawsuit bringing claims for

UIM coverage and vexatious refusal to pay.

Auto-Owners moves for summary judgment, arguing that both of

Probus-Schad's claims fail because she is not entitled to UIM coverage.  Auto-Owners

contends that the at-fault driver's vehicle does not meet the Policy's definition of "underinsured automobile" – and thus UIM coverage does not apply – because that vehicle's bodily injury liability coverage was not less than the Policy's limit for UIM coverage. Probus-Schad argues that the Policy is ambiguous as a whole because the declarations page promises UIM coverage up to $100,000, but the later definition of "underinsured automobile" and set-off provisions take UIM coverage away. Because Probus-Schad is not entitled to UIM coverage under the Policy's unambiguous UIM provisions, I will grant summary judgment in favor of Auto-Owners.

## Legal Standard

Summary judgment is appropriate if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Meyer v. McKenzie Elec. Coop., Inc.*, 947 F.3d 506, 508 (8th Cir. 2020); Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Here, there is no dispute of material fact. The only remaining issue is whether the Policy provides coverage under the stipulated facts, and "the interpretation of an insurance policy is a question of law." *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725,

728 (8th Cir. 2011) (citing *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc)).

## Undisputed Material Facts

On March 23, 2024, Probus-Schad was a passenger in a vehicle driving southbound on Hampton Avenue in St. Louis City, Missouri when another driver rear-ended her vehicle.  Probus-Schad alleges that as a result of the accident, she sustained bodily injuries with damages exceeding $150,000.  At the time of the accident, Probus-Schad was insured under the Policy, which was issued to her by Auto-Owners and had a $100,000 per-person limit for UIM coverage.  The at-fault driver's insurance policy had a $100,000 limit of liability for bodily injuries, and Probus-Schad recovered the entire $100,000 limit from the at-fault driver's insurer.

The Policy contains the following relevant provisions:

### UNDERINSURED MOTORIST COVERAGE

**1.  DEFINITIONS**

The following definitions apply only to this coverage and are in addition to those contained in **SECTION I – DEFINITIONS** of the policy.

. . . .

**c.  Underinsured automobile** means an **automobile** to which a **bodily injury** liability bond or liability insurance policy applies at the time of the **occurrence**:

  **(1)**  with limits of liability at least equal to or greater than the limits required by the Motor Vehicle Financial Responsibility Law of

- 3 -

Missouri; and

**(2)** such limits of liability are less than those stated in the Declarations for Underinsured Motorist Coverage.

. . . .

## 2.  COVERAGE

**a.**  **Our** Underinsured Motorist Coverage provides gap coverage for **you** and any insured person who is legally entitled to recover damages for **bodily injury** from the owner or operator of an **underinsured automobile**.  This Underinsured Motorist Coverage is designed only to place **you** and any insured person in the same position that **you** and any insured person would have been if the owner or operator of the **underinsured automobile** had a **bodily injury** liability bond or policy with limits of liability for **bodily injury** equal to the limits of liability for this coverage at the time of the **occurrence** and is not intended to provide excess insurance coverage over the coverage provided by the **bodily injury** liability bond or policy applicable to the owner or operator of the **underinsured automobile**.  Our payment of Underinsured Motorist Coverage is further subject to the limitations and reductions on this coverage set forth in **SECTION 4. LIMIT OF LIABILITY**.

. . . .

## 4.  LIMIT OF LIABILITY

**a.**  The Limits of Liability stated in the Declarations for Underinsured Motorist Coverage are for reference purposes only.  Our duty to pay Underinsured Motorist Coverage is the difference between the Limits of Liability for this coverage and the limitations and reductions on this coverage set forth in **4. LIMIT OF LIABILITY**, **b.** through **e.** shown below.  Under no circumstances do we have a duty to pay you or any person entitled to Underinsured Motorist Coverage under this policy the entire Limits of Liability stated in the Declarations for this coverage.

The Policy then contains the following "set-off" provisions:

**b.** Subject to the Limits of Liability stated in the Declarations for Underinsured Motorist Coverage and paragraph **4.a.** above, **our** payment for Underinsured Motorist Coverage shall not exceed the lowest of:

**(1)** the amount by which the Underinsured Motorist Coverage Limits of Liability stated in the Declarations exceed the total limits of all **bodily injury** liability bonds and liability insurance policies available to the owner or operator of the **underinsured automobile**; or

**(2)** the amount by which compensatory damages, including but not limited to loss of consortium, because of **bodily injury** exceed the total limits of all **bodily injury** liability bonds and liability insurance policies available to the owner or operator of the **underinsured automobile**.

### Discussion

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The parties agree that Missouri law controls. I must therefore "apply Missouri law as declared by the Supreme Court of Missouri and may not disregard decisions of the Missouri Court of Appeals." *Int'l Env't Mgmt., Inc. v. United Corp. Servs., Inc.*, 858 F.3d 1121, 1125 (8th Cir. 2017).

"There are no statutory requirements in Missouri for underinsured motorist coverage. Therefore, the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer."

*Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. 1991) (en

banc).  "The general rules for interpretation of other contracts apply to insurance contracts as well.  The key is whether the contract language is ambiguous or unambiguous."  *Peters v. Emps. Mut. Cas. Co.*, 853 S.W.2d 300, 301-02 (Mo. 1993) (en banc).

"When determining whether an ambiguity exists, courts should not interpret policy provisions in isolation but rather evaluate policies as a whole."  *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. 2017) (en banc) (citation modified).  "When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured. . . .  However, where insurance policies are unambiguous, they will be enforced as written."  *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007) (en banc) (citation modified).  "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy."  *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017) (en banc).  "Additionally, 'it is well-settled that where one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous.'"  *Id.* (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 140-41 (Mo. 2009) (en banc)).  In the UIM context, the Missouri Supreme Court has held that "an ambiguity exists when the policy contains both: (1) express language indicating the insurer will indeed pay up to the declarations'

listed limit amount; and (2) set-off provisions ensuring the insurer will never be obligated to pay such amount." *Craig*, 514 S.W.3d at 617 (citations omitted).

Here, the Policy defines an "underinsured automobile" as "an **automobile** to which a **bodily injury** liability bond or insurance policy applies at the time of the **occurrence**" with limits of liability that "are less than those stated in the Declarations for Underinsured Motorist Coverage." The parties have stipulated that Probus-Schad's Policy had a $100,000 limit for UIM coverage and that the at-fault driver had an insurance policy with a bodily injury limit of $100,000. Therefore, the at-fault driver's vehicle did not satisfy the Policy's definition of "underinsured automobile" was not satisfied because the at-fault driver's policy had a liability limit that equaled Probus-Schad's UIM coverage.

Probus-Schad nevertheless argues that the Policy is ambiguous as a whole because the declarations page promises UIM coverage up to $100,000, but the definition of "underinsured automobile" takes UIM coverage away. She also contends that the set-off provisions in the Policy's "Limit of Liability" section," when read together with the definition of "underinsured automobile," guarantee that she could never recover the full $100,000. The Missouri Supreme Court, however, has repeatedly rejected these arguments and concluded that policies containing definitions and set-off provisions like those in Probus-Schad's Policy are unambiguous and enforceable. *See,*

*e.g.*, *Swadley*, 513 S.W.3d at 357-58; *Craig*, 514 S.W.3d at 615-18; *Rodriguez*, 808 S.W.2d at 381-83.

In *Swadley*, the plaintiffs' insurance policy had a UIM limit of $100,000 and defined an "underinsured motor vehicle" as a motor vehicle covered by an "insurance policy, applicable to the occurrence; **but the monetary limits of that . . . policy, are less than the limits of underinsured motorists coverage shown in the Declarations**." *Id.* at 356.  There, the Missouri Supreme Court concluded that the "clear and intentional effect of this definition is that UIM coverage will not apply when the underinsured motorist has liability coverage equal to or greater than $100,000." *Id.* at 375.  In rejecting the plaintiffs' arguments that the policy's language was ambiguous, the Missouri Supreme Court reasoned as follows:

> Nowhere does this policy expressly promise UIM coverage under *every* circumstance, and nowhere does it promise UIM coverage when the underinsured motorist has liability coverage equal to or greater than the UIM limit.  Therefore, the policy is not rendered ambiguous by the fact that the policy's definition of "underinsured motor vehicle" restricts UIM coverage to applying only when the underinsured motorist has liability coverage less than the UIM limit. . . .

*Id.*

The same reasoning applies here.  The Policy never expressly promises UIM coverage when the underinsured motorist has liability coverage equal to the UIM limit, and it is not rendered ambiguous by the definition of "underinsured automobile," which "restricts UIM coverage to applying only when the

underinsured motorist has less liability coverage than the UIM limit." *Id.*  Thus,

Probus-Schad is not entitled to UIM coverage because the at-fault driver's policy

had liability coverage that was equal to the $100,000 UIM limit. *See id.*;

*Rodriguez*, 808 S.W.2d at 382 ("Since [the at-fault driver's] coverage is equal to

the limit of liability under the [plaintiffs'] policy, [the at-fault driver] was not an

underinsured motorist as defined by the [plaintiffs'] policy."); *Owners Ins. Co. v.

Hughes*, 712 F.3d 392, 394-95 (8th Cir. 2013) (applying Missouri law and

concluding that the at-fault driver's vehicle was not an "underinsured automobile"

under the plain language of the policy where "underinsured automobile" was

defined as an automobile with bodily liability coverage of at least $25,000 but less

than $100,000, and the at-fault driver's "liability insurance bodily injury limit was

exactly $100,000, not 'less than' $100,000").

Probus-Schad also contends that – because an "underinsured automobile" must,

by definition, have at least $25,000 in coverage to comply with Missouri law – the

set-off provisions guarantee that the $100,000 UIM limit will be reduced by at least

$25,000, which means that she could never recover the full $100,000 UIM limit listed

in the declarations page.  But the Missouri Supreme Court rejected this argument in

*Rodriguez*, stating that it was "difficult to understand why the mathematical

inability to collect a full $50,000 in underinsured motorist coverage renders the

coverage meaningless.  The effect of underinsured motorist coverage is to assure

- 9 -

the [insured] of receiving $50,000, the contracted amount of protection." 808 S.W.2d at 382-83 & n.1. The Missouri Supreme Court later held that set-off provisions identical to those in Probus-Schad's Policy were unambiguous. *Craig*, 514 S.W.3d at 615-17. In *Craig*, the court concluded that there was no internal inconsistency or contradiction in the policy because it contained "no express language indicating the insurer will pay up to the declarations' listed limit amount," and the "Limit of Liability" section in the UIM endorsement expressly stated that "the declarations' listed limit amount is 'for reference purposes only' and '[u]nder no circumstances' will [the insurer] have a duty to pay that entire amount." *Id.* at 617.

The same is true here. There is no internal inconsistency or contradiction in the Policy because it contains no express language indicating that Auto-Owners would pay the full $100,000 UIM limit, and the "Limit of Liability" section expressly states that "[u]nder no circumstances" will Auto-Owners have a duty to pay the entire UIM limit amount. *See id.* Additionally, any "disputes about the *amount* [Auto-Owners] must contribute simply do not inject ambiguity into the meaning of *what* is a covered 'underinsured [automobile]' so as to render the UIM definition unclear." *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 450 (8th Cir. 2016) (rejecting plaintiff's substantively identical argument and concluding that nothing in the insurer's "UIM limit-of-liability section undermines the

- 10 -

requirement that a tortfeasor's vehicle first must qualify as underinsured in order to trigger UIM coverage" (citation modified)).

In the absence of ambiguity, the Policy must be enforced according to its terms.  Probus-Schad is not entitled to UIM coverage because the at-fault driver's bodily injury limit was not less than $100,000, as required by the Policy's unambiguous definition of underinsured automobile.  Thus, Probus-Schad's claims for UIM coverage and vexatious refusal fail, and Auto-Owners is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment [20] is **GRANTED**.

A separate judgment is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2026.